UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| LISA STAPLES, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:16-cv-00091-GZS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security,[1] | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") appeal raises the question of whether substantial evidence supports the residual functional capacity ("RFC") assigned to the plaintiff by the administrative law judge. I conclude that it does not and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

[2] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 14, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

requirements of the Social Security Act through September 30, 2013, Finding 1, Record at 13; that she suffered from bipolar disorder with panic and agoraphobia, bilateral plantar fasciitis, status-post fascieotomy to the right foot, degenerative joint disease and tarsal tunnel syndrome to the right foot, obesity, chronic obstructive pulmonary disease ("COPD"), and a substance addiction disorder, impairments that were severe but which, considered separately or in combination, failed to meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 13-14; that she had the RFC to perform light work, except that she could occasionally use foot controls and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, could not work around dangerous equipment, temperature extremes, humidity, wetness, or concentrated environmental pollutants, could not perform tasks requiring a variety of instructions, but could understand and carry out simple, one or two-step oral or written instructions and detailed, but uninvolved, written or oral instructions involving a few concrete variables in standardized situations, could tolerate only minimal changes in the workplace setting and to her routine, could make simple work-related judgments, and could not work in crowds, but could tolerate occasional and incidental contact with the general public, Finding 5, *id.* at 16; that, through her date last insured, she was unable to perform any past relevant work, Finding 6, *id.* at 21; that, considering her age (50 years old, defined as an individual closely approaching advanced age, on her date last insured), limited education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.*; and that she, therefore, had not been disabled from February 29, 2011, the alleged date of onset of disability, through the date last insured, September 30, 2013, Finding 11, *id.* at 23. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final

determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g), *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks remand on the bases that, in determining both her physical and mental RFC, the administrative law judge improperly (i) relied in part on the opinions of agency nonexamining consultants that she acknowledged were superseded by material new evidence, (ii) rejected the opinions of treating physician Karen Lawes, M.D., and (iii) filled the void by construing raw medical evidence, as a result of which neither component of the RFC determination was supported by substantial evidence. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 4-15.

I conclude that the administrative law judge permissibly accorded little weight to the Lawes opinions but that her mental and physical RFC determinations were neither supported by expert

3

medical opinion nor the product of a permissible commonsense judgment. *See Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," he "is not qualified to assess residual functional capacity based on a bare medical record."). Because the administrative law judge expressly gave only "little" or "some" weight to agency nonexamining consultants' opinions on the basis that evidence received at the hearing level demonstrated that the plaintiff had greater restrictions, I reject the commissioner's argument, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 13) at 11, 14-16, that she assessed an RFC more favorable than the evidence supports and/or gave the plaintiff the benefit of the doubt, rendering any *Gordils* error harmless.

### A. Mental RFC

Adjudicators must follow a prescribed technique in assessing whether, at Step 2, a claimant has medically determinable mental impairment(s); if so, whether, at Steps 2 and 3, such impairments are severe and meet or equal the criteria of any of the Listings; and, if one proceeds to Steps 4 and 5, the degree to which such impairments impact RFC. *See* 20 C.F.R. § 404.1520a.

At Step 2, the severity of a mental impairment is assessed on the basis of a rating of the degree of limitation in four broad functional areas: (i) activities of daily living, (ii) social functioning, (iii) concentration, persistence, or pace, and (iv) episodes of decompensation. *See id.* If a mental impairment is judged to be severe but not to meet or equal a Listing, assessment of a

claimant's mental RFC is required; if it is judged nonsevere, no mental RFC assessment need be made. *See id.*[3]

The record contains three expert opinions bearing on the severity of the plaintiff's mental impairments, none of which constitutes an RFC opinion in the sense that it sets forth specific capacities or limitations. Two agency nonexamining consultants, Thomas Knox, Ph.D., in an opinion dated December 28, 2012, and Brian Stahl, Ph.D., in an opinion dated June 7, 2013, deemed the plaintiff's mental impairments nonsevere, finding only mild limitations in the first three broad functional areas and no episodes of decompensation. *See* Record at 106, 120. As a result, they made no assessment of the plaintiff's mental RFC. *See id.* at 106-07, 120-21. In an opinion dated July 18, 2014, the plaintiff's treating physician, Dr. Lawes, indicated that the plaintiff's mental impairments markedly limited or effectively precluded a number of work-related functions, including the abilities to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour workday, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and interact appropriately with the general public. *See id.* at 1174-75.

The administrative law judge gave "little weight" to the Knox and Stahl opinions, explaining that "[e]vidence received at the hearing level demonstrates that the [plaintiff's] mental impairments are severe and result in moderate difficulties in maintaining social functioning and concentration, persistence or pace." *Id.* at 20.

She also accorded "little weight" to Dr. Lawes' opinion, "as her treatment records consistently noted the [plaintiff] as alert and in a euthymic mood." *Id.* (citations omitted). In

---

[3] Effective January 17, 2017, the commissioner will instead analyze the following four broad functional categories: (i) "[u]nderstand, remember, or apply information;" (ii) "interact with others;" (iii) "concentrate, persist, or maintain pace;" and (iv) "adapt or manage oneself." 20 C.F.R. § 404.1520a. These revisions have no effect on the instant case.

addition, in the context of addressing Dr. Lawes' physical RFC opinion, she made an observation that pertains to her opinion on the severity of the plaintiff's mental impairments: that Dr. Lawes had noted that her treatment relationship with the plaintiff was limited to four office visits. *See id*. In doing so, she alluded to the following handwritten statement by Dr. Lawes at the conclusion of her opinions:

> [The plaintiff] is somewhat new to me but has already been in 6 times since establishing 4 months ago. She is obese and has severe asthma that restrict her physically, as well as chronic pain. She also has a psychiatrist who manages her longstanding severe mental health issues – which also limit her ability to work.

*Id*. at 1175.[4]

An administrative law judge is required to supply good reasons for the weight assigned to a treating source's opinion. *See, e.g.*, 20 C.F.R. § 404.1527(c) & (c)(2) ("Regardless of its source, we will evaluate every medical opinion we receive. . . . We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."). The administrative law judge did so here, identifying inconsistencies between Dr. Lawes' notes and her opinion and alluding to Dr. Lawes' acknowledgement that the plaintiff was "somewhat new" to her and that the plaintiff's psychiatrist, rather than Dr. Lawes, managed her mental health issues. *See id*. § 404.1527(c) (factors relevant to the assessment of a treating source's medical opinion are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi)

---

[4] The administrative law judge mischaracterized the record in stating that Dr. Lawes noted that her treatment relationship with the plaintiff had been limited to four office visits. *Compare* Record at 20 with *id*. at 1175. However, nothing turns on the error. As the commissioner points out, *see* Opposition at 6-7, the record indicates that Dr. Lawes did not begin treating the plaintiff until May 12, 2014, almost nine months after her date last insured, *see* Record at 1325-27, and treated her again only twice more, on May 21, 2014, and July 16, 2014, before providing the opinions at issue, *see id*. at 1170-75, 1318-21, 1322-24.

6

other factors that tend to support or contradict the opinion); *Newcomb v. Colvin*, No. 2:15-cv-463-DBH, 2016 WL 3962843, at *10 (D. Me. July 22, 2016) (rec. dec., *aff'd* Aug. 10, 2016) ("When a treating source's opinion is inconsistent with his own progress notes and those of other treating and examining practitioners, the highlighted inconsistencies, in themselves, constitute 'good reasons' to reject the opinion.") (citation and internal punctuation omitted).[5]

While the administrative law judge did purport to give "little weight" to the Lawes, Knox, and Stahl opinions, she did not explain in what respects she credited any of them. Nor, as a practical matter, could she have given any weight to the opinions of Drs. Knox or Stahl, neither of whom had occasion to assess the plaintiff's mental RFC. Hence, as the plaintiff argues, *see* Statement of Errors at 12-13, the administrative law judge largely, if not entirely, construed the raw medical evidence to arrive at that determination.[6] As a layperson, she was not in a position to make a commonsense judgment that the plaintiff's mental impairments translated to the limitations and capacities that she assessed.[7] Her mental RFC, accordingly, is unsupported by substantial evidence of record.

---

[5] In her brief, and through counsel at oral argument, the plaintiff cited *Johnson v. Astrue*, 597 F.3d 409 (1st Cir. 2009), for the proposition that the fact that Dr. Lawes had seen the plaintiff only four – or even three – times did not constitute a "good" reason to afford her opinions little weight. *See* Statement of Errors at 8; *Johnson*, 597 F.3d at 411 (fact that treating physician had seen claimant only three times at roughly three-month intervals did not constitute good reason to reject his opinion in absence of any explanation for, or citation in support of, administrative law judge's belief that treatment relationship had been too attenuated to enable treating physician to offer an informed opinion about claimant's physical capabilities; nor was that obvious to a layperson). *Johnson* is distinguishable in that, here, Dr. Lawes herself described the plaintiff as "somewhat new" to her and noted that her mental health issues were managed by her psychiatrist. The administrative law judge reasonably could conclude that these statements, in addition to the timing and relatively short length of the treatment relationship, called into question the degree to which Dr. Lawes could offer an informed opinion about the plaintiff's mental capabilities as of her date last insured.

[6] The administrative law judge arguably credited certain aspects of Dr. Lawes' opinion; for example, that the plaintiff was markedly limited or effectively precluded from understanding, remembering, and carrying out detailed instructions. *Compare* Finding 5, Record at 16 *with id*. at 1174. However, because she explicitly gave the Lawes opinion little weight and did not explain which aspects she credited, which she rejected, and why, it cannot stand as substantial evidence of her mental RFC determination.

[7] The commissioner argues that, in assessing the plaintiff's mental RFC, the administrative law judge properly relied on treatment records documenting improvements in her mood and her affect on medication; for example, one treating source documented that she was in a "good" mood with a "bright and engaging" affect and often described her mood as "euthymic." Opposition at 13 (quoting Record at 304, 309, 319, 362). Yet, the commissioner does not explain,

The commissioner argues that any error in interpreting raw medical data with respect to the plaintiff's mental RFC nonetheless is harmless because the plaintiff failed to point to any credible evidence supporting additional limitations. *See* Opposition at 11-16. She cites *Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423 (D. Me. June 25, 2015), *Wright v. Colvin*, No. 2:14-cv-75-JHR, 2015 WL 58458 (D. Me. Jan. 5, 2015), *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401 (D. Me. Jan. 5, 2015), and *Bowden v. Colvin*, No. 1:13-CV-201-GZS, 2014 WL 1664961 (D. Me. Apr. 25, 2014), for the proposition that remand is not required when an administrative law judge properly discounts a treating source opinion and assesses an RFC more favorable than the remaining evidence would otherwise support. *See, e.g., id*. at 11-12, 15. She contends that the only evidence to which the plaintiff points that would support greater restrictions was the Lawes opinion, which the administrative law judge properly discounted. *See id.* at 13-14.

The plaintiff relies, *inter alia*, on *Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010), for the proposition that remand is warranted on these facts. *See* Statement of Errors at 11. At oral argument, counsel for both the plaintiff and the commissioner agreed that there is a tension between *Staples*, on the one hand, and *Davis*, *Wright*, *Soto*, and *Bowden*, on the other. However, the plaintiff's counsel argued that the court need not resolve that alleged tension because *Davis*, *Wright*, *Soto*, and *Bowden* are distinguishable on their facts. I agree that *Davis*, *Wright*, *Soto*, and *Bowden* are distinguishable from this case.

*Davis*, *Wright*, and *Soto* are distinguishable because, in those cases, the administrative law judge did not indicate that agency nonexamining consultants' RFC opinions had been called into question by later-submitted evidence. *See Davis*, 2015 WL 3937423 at *2-*5; *Wright*, 2015 WL

---

and it is not otherwise apparent, how the administrative law judge as a layperson could make a commonsense judgment that the plaintiff had the assessed mental RFC on the basis of review of those notes.

58458 at *2-5; *Soto*, 2015 WL 58401 at *2-*3. Nor did the court, in any of those cases, hold that those opinions could not serve as substantial evidence of the claimants' RFC. *See id*. Thus, in those cases, to the extent that the administrative law judge supportably rejected treating source opinions but assessed greater limitations than found by agency consultants, he or she arrived at an RFC determination more favorable than the evidence would otherwise support.[8]

In *Bowden*, as in this case, the administrative law judge gave little weight to an agency nonexamining consultant's opinion as to the impact of the claimant's COPD when much of the evidence concerning that condition postdated the consultant's opinion. *See Bowden*, 2014 WL 1664961, at *3. However, *Bowden* is distinguishable because, there, the court held that the administrative law judge made a permissible commonsense judgment pursuant to *Gordils* when (i) the medical evidence indicated that the claimant's COPD condition caused relatively minimal impairment and (ii) the administrative law judge relied on the claimant's own testimony regarding the limitations caused by his COPD. *See id*. at *3-*4. Against that backdrop, the court noted that the administrative law judge had assessed limitations more favorable to the claimant than the record evidence would otherwise support. *See id*. at *4.

In this case, by contrast, the administrative law judge expressly stated that she gave little weight to the Knox and Stahl opinions because "[e]vidence received at the hearing level

---

[8] In *Soto*, the court noted that the administrative law judge had not relied on agency consultants' opinions issued prior to the time the claimant began seeing one of the treating physicians on whose opinion the claimant relied. *See Soto*, 2015 WL 58401 at *2. It reasoned that, therefore, the administrative law judge's decision not to rely on the agency consultants' opinions could not, standing alone, constitute reversible error. *See id*. However, there is no indication that in *Soto*, as here, the administrative law judge disclaimed reliance on the agency consultants' opinions because the reviewers did not see material later-submitted evidence. *See id*. Nor did the court hold that those opinions could not stand as substantial evidence of the claimant's mental RFC. *See id*.

9

demonstrates that the [plaintiff's] mental impairments are severe and result in moderate difficulties in maintaining social functioning and concentration, persistence or pace." Record at 20.[9]

This was, as the plaintiff argues, *see* Statement of Errors at 11, effectively a concession that the Knox and Stahl opinions could not stand as substantial evidence of her mental RFC, *see Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted); *Brackett v. Astrue,* No. 2:10-cv-24-DBH, 2010 WL 5467254, at *5 (D. Me. Dec. 29, 2010) (rec. dec., *aff'd* Jan. 19, 2011) ("[T]here is no bright-line test of when reliance on a nonexamining expert consultant is permissible in determining a claimant's physical or mental RFC," although "[f]actors to be considered include the completeness of the consultant's review of the full record and whether portions of the record unseen by the consultant reflect material change or are merely cumulative or consistent with the preexisting record and/or contain evidence supportably dismissed or minimized by the administrative law judge.") (citations omitted).

Thus, instead of assessing a mental RFC that gave the plaintiff "the benefit of the doubt" or otherwise was more favorable than the remaining evidence would support, the administrative law judge, as in *Staples*, assessed an RFC unsupported by substantial evidence. *See Staples*, 2010

---

[9] For this reason, the commissioner's argument that, "to be entitled to remand, Plaintiff must identify 'entries in the medical records that would have caused [the state agency sources] to change their opinions[,]'" is misplaced. Opposition at 3 (quoting *Brown v. Colvin*, No. 2:13-cv-00333-NT, 2014 WL 6452892, at *4 (D. Me. Nov. 17, 2014); citing *Oliver v. Astrue*, No. 1:11-cv-390-GZS, 2012 WL 3023329, at *6 (D. Me. June 26, 2012) (rec. dec., *aff'd* July 24, 2012)). The issue in both *Brown* and *Oliver* was whether administrative law judges had erred in according substantial weight to opinions of agency nonexamining consultants who had not had the benefit of later-submitted evidence. *See Brown*, 2014 WL 6452892, at *4; *Oliver*, 2012 WL 3023329, at *6. Here, the administrative law judge herself indicated that she gave little weight (effectively, no weight) to agency nonexamining consultants' opinions because they had not reviewed evidence adduced at the hearing level.

WL 2680527, at *3-*6 (rejecting argument that administrative law judge gave claimant "benefit of the doubt," rendering error in assessing mental RFC on basis of raw medical evidence harmless, when she affirmatively stated that claimant had a severe mental impairment prior to his date last insured and that she gave weight to the opinions of agency nonexamining consultants – none of whom found a severe mental impairment or provided a mental RFC opinion – only to the extent that they indicated claimant had a medically determinable mental impairment prior to his date last insured).

That, in turn, undermined the relevance of the vocational expert testimony on which the administrative law judge relied to meet the commissioner's Step 5 burden that a person with the posited RFC could perform jobs existing in significant numbers in the national economy, warranting reversal and remand.  *See* Record at 22-23; *Arocho v. Secretary of Health & Human Servs.,* 670 F.2d 374, 375 (1st Cir.1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record); *see also, e.g., Staples*, 2010 WL 2680527, at *6.

## B.  Physical RFC

The record contains three opinions squarely addressing the plaintiff's physical RFC: those of agency nonexamining consultants Benjamin Weinberg, M.D., dated December 20, 2012, and Richard T. Chamberlin, M.D., dated June 20, 2013, deeming the plaintiff capable of performing medium exertional level work with certain additional restrictions, *see* Record at 107-09, 122-24, and that of Dr. Lawes, dated July 18, 2014, deeming the plaintiff capable as of December 31, 2008,

of performing less than sedentary exertional level work with certain additional restrictions, *see id*. at 1170-73.[10]

The administrative law judge gave "some weight" to the Weinberg and Chamberlin opinions to the extent consistent with her RFC determination, explaining, "[E]vidence received at the hearing level is more consistent with a light exertional lifting and carrying capacity and limits in [the plaintiff's] ability to utilize foot controls or perform various postural movements." *Id*. at 20.[11] She gave "little weight" to the Lawes physical RFC opinion, explaining:

> Dr. Lawes opined that the [plaintiff's] obesity, chronic pain, and severe asthma restrict her to lifting and/or carrying no more than ten pounds, standing and/or walking for less than two hours in an eight-hour workday, and preclude most postural movements. However, she also noted that her treatment relationship with the [plaintiff] is limited to four office visits. Dr. Lawes' opinion also fails to mention that the condition is exacerbated by her continued smoking. In addition, Dr. Lawes' treatment records indicated that the [plaintiff's] lungs are normal and clear with no objective evidence of acute bronchospasm, and that steroids are unlikely to help. In fact, these records noted only a few exacerbations of the [plaintiff's] asthma, which ultimately responded to treatment. Her treatment notes revealed that the [plaintiff] consistently presented with a normal gait and stance, as well as normal movement in all extremities.

*Id*. (citations omitted).

Again, the handling of the Lawes opinion passes muster in that the administrative law judge provided good reasons to afford it little weight, alluding to the plaintiff's relatively recent initiation of treatment with Dr. Lawes, noting Dr. Lawes' failure to consider the impact of her ongoing smoking, and pointing to inconsistencies between Dr. Lawes' objective findings as recorded in her

---

[10] The full range of medium work entails "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds" and "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying of objects weighing up to 25 pounds." Social Security Ruling 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 ("SSR 83-10"), at 30. The full range of sedentary work entails "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" as well as sitting for approximately six hours, and standing or walking for no more than about two hours, in an eight-hour workday. *Id*. at 29.

[11] The full range of light work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,]" with "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10 at 29.

treatment notes and her opinion that the plaintiff was severely limited in her ability to lift/carry and stand/walk by her obesity, chronic pain, and severe asthma. *See, e.g.*, 20 C.F.R. § 404.1527(c); *Newcomb*, 2016 WL 3962843, at *10.

Nevertheless, as the plaintiff argues, *see* Statement of Errors at 7-8, despite the administrative law judge's partial reliance on the Weinberg and Chamberlin RFC opinions, she again acknowledged that evidence unseen by both consultants called their opinions into question, *see* Record at 20 ("[E]vidence received at the hearing level is more consistent with a light exertional lifting and carrying capacity and limits in [the plaintiff's] ability to utilize foot controls or perform various postural movements."). As in the case of her assessment of the plaintiff's mental RFC, the administrative law judge did not explain how she construed the evidence unseen by Drs. Weinberg and Chamberlin – in other words, the raw medical evidence – to conclude that the plaintiff retained a light exertional capacity and required limits on her use of foot controls as well as greater postural limitations, but no additional or different limitations. *See id*.

Earlier in her opinion, she summarized evidence, unseen by Drs. Weinberg and Chamberlin, indicating that, although the plaintiff had reported as of early 2013 that surgery performed the prior year on both feet by treating podiatrist Jeffrey Johnson, D.P.M., had seemingly resolved her pain, she was experiencing new pain in her right foot as of June 21, 2013. *See id*. at 19.[12]

As the administrative law judge also noted, the plaintiff presented to Michael Kipp, D.P.M., on September 8, 2014, "reporting that, despite surgery and post-surgical conservative treatment, including physical therapy, she continue[d] to experience significant right lateral foot pain at the level of her cuboid bone." *Id*. at 20 (citation omitted). The administrative law judge added that

---

[12] Dr. Chamberlin noted that "[a]t reconsideration the MER [medical evidence of record] documents that the foot surgery is complete with good healing and good response to physiotherapy." Record at 121.

Dr. Kipp diagnosed the plaintiff with "right foot pain secondary to cuboid syndrome and recommended continued conservative treatment, including stretching and strengthening." *Id*. (citation omitted). While the 2014 note postdated the plaintiff's date last insured by nearly a year, it was, as the administrative law judge recognized, relevant to her condition as of that time.

At oral argument, the plaintiff's counsel provided to the court, without objection, two demonstrative exhibits containing excerpts from the record that he contended the administrative law judge interpreted in deviating in part from the opinions of Drs. Weinberg and Chamberlin. *See* Exhs. 1, 2. These illustrate that, on June 7, 2013, the plaintiff reported to a primary care practitioner that she had been experiencing severe pain in her right foot for two weeks, *see* Record at 1137, included in Exh. 1, and that she continued through at least September 8, 2014, to report severe right-foot pain to Dr. Johnson and other practitioners, *see id.* at 1046, included in Exh. 1; *id*. at 1067, 1080, 1083, 1125, 1131, 1335, included in Exh. 2. Findings on examination included tenderness to palpation and swelling. *See id*. at 1046, 1080, 1137, 1335. The pain was noted to be worse with walking and/or standing, *see id*. at 1046, 1083, 1335, and the plaintiff was twice instructed to rest/ice her foot as needed, *see id*. at 1046, 1137.

In the circumstances, as the plaintiff's counsel argued, it is difficult to understand why the administrative law judge deemed the plaintiff restricted in her use of foot controls but capable of standing and/or walking for six hours in an eight-hour workday.

In the absence of any explanation by the administrative law judge as to how, in deviating from the Weinberg and Chamberlin opinions, she derived components of her physical RFC, that RFC determination cannot be found to be supported by substantial evidence. In turn, as in the case of the mental RFC finding, this undermined the relevance of the vocational expert testimony on which the administrative law judge relied to meet the commissioner's Step 5 burden that a person

with the posited RFC could perform jobs existing in significant numbers in the national economy. *See* Record at 22-23; *Arocho,* 670 F.2d at 375. Reversal and remand, accordingly, are warranted on this basis, as well.[13]

The commissioner again argues that any error is harmless because the plaintiff failed to point to any evidence demonstrating a need for greater limitations than those assessed other than the Lawes opinion, which she argues was properly accorded little weight. *See* Opposition at 11, 14-16. She adds that, by assessing a more restrictive RFC than was supported by a credible state agency opinion, the administrative law judge gave the plaintiff "the benefit of the doubt." *Id.* at 12, 15. Yet, the administrative law judge herself deemed the agency nonexamining consultants' opinions less than fully credible on the basis that they lacked the benefit of review of material later-submitted evidence. She interpreted raw medical evidence to fill in that gap. She, therefore, cannot be said to have assessed limitations greater than the evidence supports or to have given the plaintiff the benefit of the doubt. *See, e.g., Poisson v. Astrue*, No. 2:11-cv-245-NT, 2012 WL 1067661, at *3-*4 (D. Me. Mar. 28, 2012) (rec. dec., *aff'd* Apr. 24, 2012) (administrative law judge did not give claimant benefit of the doubt when, based on "evidence received at the hearing level that was more consistent with a light exertional capacity[,]" she deemed him more restricted in lifting/carrying than had agency nonexamining consultant) (citation and internal quotation marks omitted).

---

[13] Beyond this, as the plaintiff notes, *see* Statement of Errors at 13, had she been deemed limited to sedentary work, the commissioner's Medical-Vocational Guidelines (the "Grid"), contained in Appendix 2 to Subpart P, 20 C.F.R. § 404, would have directed a determination that she was disabled as of September 20, 2013, the date she turned 50, which is also her date last insured, *see* Grid § 201.09.

15

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 15th day of March, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge